IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| COURTNEY TAYLOR, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ECP BUSINESS CAPITAL LLC, a Wyoming registered corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Courtney Taylor ("Taylor" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant ECP Business Capital LLC ("ECP Business Capital" or "Defendant") to stop ECP Business Capital from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to consumers without their consent, including texts to consumers registered on the National Do Not Call registry (DNC), and to otherwise obtain injunctive and monetary relief for all persons injured by ECP Business Capital's conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Taylor is a Rowlett, Texas resident.

2. Defendant ECP Business Capital is a Wyoming registered company headquartered in Lexington, Kentucky.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in May 2024 alone, at a rate of 144.5 million per day. www.robocallindex.com (last visited June 16, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. ECP Business Capital provides capital solutions to businesses throughout the U.S.[3]

14. ECP Business Capital sends out text messages to consumers to generate business.

15. ECP Business Capital sends out unsolicited text messages to consumers who registered their phone numbers on the DNC, as per Plaintiff's experience.

16. ECP Business Capital is open about the cold calls it places.

17. In job postings for its sales team, ECP Business Capital specifically lists cold calling:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/ecplending/about/

> THIS IS WHAT YOUR DAY TO DAY JOB WITH ECP BUSINESS CAPITAL WILL LOOK LIKE:
> - YOU WILL GET TO WORK WITH BUSINESSES NATIONWIDE HELPING THEM GAIN ACCESS TO CAPITAL. The capital needed is aimed to be fuel for expansion according to their visions for future value projections. This is very exciting because you focus on a SOAR strategy to help your clients win and exceed goals!
> - YOU WILL BE PERSISTENTLY COMMUNICATING AND FOLLOWING UP WITH BUSINESSES TO ADVANCE THE SALES CYCLE AND IMPROVE YOUR INDIVIDUALIZED SALES APPROACH DAILY. This is exciting because you will become a better and faster broker through time while learning different communication styles!
> - YOU WILL BEGIN TO UNDERSTAND AND APPLY PROVEN CONCEPTS OF DEAL STRUCTURE THROUGH COLD CALLING AND PRODUCT KNOWLEDGE TRAINING. Strategy matters when building rapport with clients! Through proven concepts, you will be able to grow to close on important deals for funding!
> - YOU WILL BE WORKING AS A TEAM MEMBER ALONGSIDE ADVANCED BROKERS IN A FUN ENVIRONMENT. You will be assigned a Senior Broker who will provide the training you need and answer all questions, comments and concerns. You will also get motivated by their success because we celebrate all wins here at ECP BUSINESS CAPITAL!
> - YOU WILL BE CREATING GOALS TO FULFILL AS MOTIVATION FOR UPCOMING SALES CYCLES AND CLOSINGS. This is your chance to take control of your sales and the money you have coming in! Your success depends on you, your work ethic, and your dedication to ECP! Come dedicate time with us and win!
> - YOU WILL HAVE A SUBSTANTIAL IMPACT ON OUR COMPANY'S FUTURE. You will be an asset to ECP BUSINESS CAPITAL as we grow and get to share in rewards accordingly. We have a great team who is very close with one another! You will get to participate in company outings, celebrations, dinners, etc.! [4]

18. In addition, ECP Business Capital expects its sales employees to place 300+ calls per day:

> **Responsibilities**
> Job Description
> PLEASE REVIEW OUR WEBSITE BEFORE APPLYING - www.ecplending.com
> Please also check off the qualifications from our list! Is ECP BUSINESS CAPITAL the right place for you? We need you to meet our requirements before we interview you!
> - YOU HAVE THE ABILITY TO WORK IN A DYNAMIC, FAST PACED, HIGH VOLUME OUTBOUND CALL ENVIRONMENT AND ARE ABLE TO MAKE 300+ CALLS PER DAY. [5]

19. In Plaintiff's case, ECP Business Capital agents sent multiple text messages to her cellular phone despite Plaintiff having her phone number registered on the DNC to avoid such solicitation attempts, and never having given Defendant her cell phone number.

20. Other consumers have posted complaints about Defendant's unsolicited telemarketing, including:

- "Violate FCC communications via TCPA act. This was explained to the company reps to Robert Hung and "Director" Connor Stone. They continue to harass my personal cell with unwanted solicitations. FCC complaints filed as well as my cell carrier."[6]

---

[4] https://www.wayup.com/i-j-ECP-Business-Capital-391581119737267/
[5] *Id.*
[6] https://www.google.com/search?q=ecp+solutions+ky

- "These people called and texted me in violation of the Telephone Consumer Protection Act (TCPA). When I pointed this out the representative became very unprofessional.
A complaint has been filed with the state attorney general. By the way, look at the positive reviews and you will see most of them have only done one Google review and it's for ECP...so I'm sure they are legit...nope!"[7]
- "Learned about these people when they started spamming me. If this is even a real company, you should probably avoid them."[8]

21. In response to these text messages solicitations, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant to cease from sending unsolicited text messages to consumers' cellular telephone numbers, and otherwise text messaging consumers registered on the DNC, as well as an award of statutory damages to the members of the Class.

## PLAINTIFF'S ALLEGATIONS

22. On October 19, 2004, Plaintiff registered her cellular telephone number on the DNC in order to avoid receiving unsolicited calls and text messages.

23. Plaintiff Taylor has owned her cell phone number ending in 8487 for over 20 years.

24. Plaintiff uses her cellular phone for personal use only. Plaintiff's cellular phone number is not associated with a business.

25. Plaintiff never gave Defendant consent to text her cell phone number.

26. On March 19, 2024 at 1:25 PM, Plaintiff Taylor received an unsolicited text message to her cell phone soliciting a business loan:

---

[7] *Id.*
[8] *Id.*



27. Phone number 502-616-5377 is owned/operated by ECP Business Capital.

28. On March 20, 2024 at 2:48 PM, Plaintiff Taylor received a 2nd unsolicited text message to her cell phone soliciting a business loan from 502-649-6006:



29. Plaintiff Taylor believes this text message was sent by ECP Business Capital because it contains similar wording to the previous text message and it was sent by a 502 area code. Area code 502 is associated with Louisville, Kentucky, and extends east across the Commonwealth through Scott County, which lies adjacent to Fayette County, which is where ECP Business Capital has its headquarters.

30. When 502-649-6006 is dialed, it leads to a voicemail that has not been set-up yet.

31. On March 23, 2024 at 4:13 PM, Plaintiff Taylor received a 3rd unsolicited text message to her cell phone soliciting a business loan from 502-727-3580:

---

[9] Based on an investigation that was conducted by Plaintiff's attorneys



32. Plaintiff Taylor believes this text was sent by ECP Business Capital because it was sent by a 502 area code and the wording is similar to the previous text messages that she received from the Defendant.

33. When 502-727-3580 is dialed, it leads to a voicemail that has not been set-up yet.

34. On June 3, 2024 at 10:52 AM, Plaintiff Taylor received a 4th unsolicited text message to her cell phone from 502-689-6595:



35. Plaintiff believes that this text message was sent by ECP Business Capital because the text message is identical to the following text message that Plaintiff received.

36. On June 12, 2024 at 1:07 PM, Plaintiff Taylor received a 5th unsolicited text message to her cell phone, again from 502-616-5377. This text message is identical to the text that she received on June 3, 2024:



37. Plaintiff Taylor has never done business with ECP Business Capital.

38. Plaintiff Taylor does not have a relationship with ECP Business Capital or any of its affiliated companies, nor has she ever requested that ECP Business Capital text her or consented to any contact from Defendant.

39. Simply put, ECP Business Capital did not obtain Plaintiff's prior express written consent to send solicitation text messages to her cellular telephone.

40. The unauthorized text messages sent by ECP Business Capital, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed her use and enjoyment of her phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

41. Seeking redress for these injuries, Taylor, on behalf of herself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited text messages to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS

42. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Class:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called and/or texted more than one time within any 12 month period, (2) on the person's residential telephone number, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called and/or texted Plaintiff.

43. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

44. **Numerosity**: On information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not necessarily limited to the following:

> (a) whether Defendant systematically sent text messages to Plaintiff and consumers whose telephone numbers were registered with the National Do Not Call

registry;

(b) whether the text messages constitute telemarketing;

(c) whether Defendant's conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

47. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

# FIRST CAUSE OF ACTION
## Telephone Consumer Protection Act
## (Violation of 47 U.S.C. § 227)
## (On Behalf of Plaintiff Taylor and the Do Not Call Registry Class)

48. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

49. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

50. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[10]

51. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

52. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, phone call and/or text message solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

---

[10] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf (last visited Sept. 16, 2022).

53. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call and/or text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $1,500 in damages for such violations of 47 C.F.R. § 64.1200.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class;

c) An order declaring that Defendant's actions, as set out above, violated the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**COURTNEY TAYLOR**, individually and on behalf of all other similarly situated individuals.

Dated: June 24, 2024

By: /s/ *Jennifer R. Hall*
Jennifer R. Hall
Hall Legal Group, PLLC
306 W. Dixie Avenue
Elizabethtown, KY 42701
O: (270) 360-0470

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

* *Pro Hac Vice* Admission to be sought